BECKER et al. v. THOMAS.

## In re FARMERS' CREAMERY & ICE CREAM CO.

(Circuit Court of Appeals, Eighth Circuit. September 20, 1926.)

No. 7160.

### 1. Courts ⬤⟹405(16).

Printed record, presented by appellants to appellee for approval, but not agreed to or approved by court, is not properly for consideration of Circuit Court of Appeals.

### 2. Courts ⬤⟹406(1).

Where evidence before trial court at time case was passed on was not preserved, it cannot be considered by Circuit Court of Appeals.

### 3. Bankruptcy ⬤⟹262(1).

Agreement of trustee in bankruptcy with lien claimants purchasing bankrupt's property requiring them to pay fees and commissions, *held* not to constitute extortion in violation of their rights under Bankruptcy Act, §§ 67d, 72; (Comp. Stat. §§ 9651, 9656).

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

In the matter of the bankruptcy of the Farmers' Creamery & Ice Cream Company. Petition by Henry Becker and another for refund of certain fees and commissions, opposed by R. L. Thomas, trustee. From an adverse judgment, petitioners appeal. Affirmed.

Frank G. Drenning, of Topeka, Kan., for appellants.

Robert L. Webb, of Topeka, Kan. (Robert Stone, George T. McDermott and Beryl R. Johnson, all of Topeka, Kan., on the brief), for appellee.

Before SANBORN, STONE and KENYON, Circuit Judges.

KENYON, Circuit Judge. The Farmers' Creamery & Ice Cream Company, a corporation, was on February 7, 1924, in the District Court of the United States for the District of Kansas, First Division, adjudged a bankrupt.

The controversy presented for our consideration arises out of said bankruptcy proceedings in the following manner: The bankrupt's assets consisted of real and personal property. An offer of $28,000 having been made therefor, upon application of appellants, R. L. Thomas was on February 21, 1924, appointed a receiver to make sale thereof. On March 6, 1924, said Thomas was elected trustee of the bankrupt estate by the creditors, and duly qualified as such. One C.

A. Marker, who had been president of the defunct company, made some claim of title to the real property in the city of Topeka, which had been occupied by the bankrupt corporation, and upon which property the Kaw Valley National Bank held a mortgage for the sum of $6,000, the property also being subject to a mortgage given appellant Henry Becker in trust to secure an indebtedness of some $18,803.80 and interest, which was also secured by a chattel mortgage on personal property.

February 28, 1924, appellants filed proof of their claims as preferred, in the sum of $18,803.80, and asked that the mortgages on the plant and equipment of the bankrupt corporation be declared valid prior liens, and that the real and personal property be sold by the trustee free and clear from liens, and that the proceeds be applied to the payment of the mortgage indebtedness.

March 18, 1924, they applied for an order requiring C. A. Marker to appear and show his interest, if any, in the real property of the defunct corporation. He entered his appearance. Appellants were represented by Mr. Frank G. Drenning, their counsel in this case. Marker appeared for himself, and R. L. Webb appeared for the trustee. A trial was had consuming five days' time. The testimony was taken in shorthand by a reporter. The referee filed findings of fact and conclusions of law, which were confirmed by the Judge of the United States District Court of Kansas, in which he held that Marker had no equity in the real property occupied by the bankrupt.

About April 30, 1924, appellants filed a bid to purchase from the trustee all the assets of the bankrupt estate, including real and personal property covered by valid mortgage liens. This bid was the only one made for the property. The trustee in bankruptcy filed objections, but, after numerous conferences held between the bidders, Becker and Blakely, and the trustee, a sale was agreed upon on May 24, 1924. The terms of the sale, which were not based on the written offer, were that Becker and Blakely would pay $1,062.73 in cash for the unmortgaged personal property, and $26,500 for the mortgaged real and personal property, the $26,500 to be paid by Becker and Blakely paying to the trustee in cash an amount sufficient to cover certain expenses connected with the proceedings in the bankruptcy court in testing and determining Marker's alleged claim of title to the real property and the preservation of the same during the controversy, also the trustee, referee, and attorney fees, amounting to $2,-

329.86, which they paid on the 28th day of May, 1924, by giving their checks to the trustee. Further, Becker and Blakely were to pay the mortgage to the Kaw Valley National Bank on the real property and to surrender to the trustee the notes and the mortgages held by them on the bankrupt's property. They gave to the trustee receipts showing payments in full of the liens in the sum of $20,223.19, and also paid the mortgage due the Kaw Valley National Bank in the sum of $6,300.

The controversy arises over the payment of a part of the $2,329.86, appellants claiming that they were wrongfully compelled to pay allowances to R. L. Thomas as receiver and as trustee, also fees of the referee and of R. L. Webb as attorney for services rendered the trustee in protecting the interests of the general creditors. Appellants filed petition asking that the sum of $1,485.84, so wrongfully exacted in the payment of fees, commissions, and expenses, be refunded to them.

The court referred the issues of law and fact arising under the petition for refund and the answer of the trustee, to E. R. Adams, as a special master, for hearing and trial, he to report his findings of fact and conclusions of law to the court. The matter was tried by the special master at Topeka, Kan., January 27, 1925, and he made certain findings of fact which may be summarized as follows: That on February 28, 1924, Blakely and Becker filed in the bankruptcy proceedings an application for the court to enter an order directing the sale of the real and personal property of the bankrupt estate free and clear of all liens; that after it had been determined by the court that C. A. Marker had no title to the real property, the property then being in a position to be sold, Becker and Blakely filed a written offer of $26,500 for said real and personal property; that the trustee in bankruptcy filed written objections to this; that thereafter numerous conferences were held between said Becker and Blakely and the trustee; and that finally, on the 24th day of May, 1924, a sale was agreed upon, not on the basis of the written offer, but on verbal negotiations and agreements, the terms of which we have heretofore set forth.

Findings 5, 6, 7, and 8, respectively, of the special master are as follows:

"(5) I specifically find that one of the elements of the bid of Becker and Blakely, which was finally accepted by the trustee, was that they would pay the costs and fees mentioned in the foregoing paragraph.

"(6) At the time of the sale to Becker and Blakely, the trustee had on hand the sum of only $128.40.

"(7) On that date the terms of sale were finally agreed upon (May 24, 1924), Becker and Blakely and their attorney, Frank G. Drenning, were in the office of the referee in bankruptcy, and there was then presented to them by the referee an itemized list of the expenses and costs which were to be paid by them as a part of their bid, said items being as follows:

| | |
|---|---:|
| R. L. Thomas, commission as receiver | $147.50 |
| R. L. Thomas, premium, receiver bond, | 32.50 |
| R. L. Thomas, expense | 25.00 |
| R. L. Thomas, commission as trustee | 405.00 |
| Referee in Bankruptcy, commission | 244.14 |
| R. L. Webb, attorney for trustee | 500.00 |
| F. G. Drenning, attorney for bankrupt | 750.00 |
| F. G. Drenning, expenses | 94.02 |
| J. E. Whitmere, transcribing evidence | 35.00 |
| Gas | 31.32 |
| Light | 8.13 |
| Telephone | 19.55 |
| Appraisers | 15.00 |
| Witnesses | 22.70 |
| Total | $2,329.86 |

"(8) I find that the commissions charged by the receiver, trustee, and referee were computed as provided by the Bankruptcy Act, and further find that the fees allowed to attorneys were reasonable."

The special master also found that on May 28, 1924, Becker and Blakely gave their checks to the trustee for this $2,329.86; that the trustee issued checks in payment of the items of cost in finding 7, including the fee of Mr. Drenning, the attorney for Becker and Blakely; that, after the payment of the said $2,329.86 to the trustee, the real and personal property was conveyed to Becker and Blakely; that no steps at any time were taken to question the amounts which they had paid in cash covering said costs until the filing of the present petitions on the 18th day of November, 1924.

The special master submitted his conclusions, which were that the sale to Becker and Blakely was made with the understanding and agreement on their part to pay in cash the costs in the bankruptcy proceedings, which were agreed upon as $2,329.86; and that, "had it not been for their agreement to pay these items of costs, the trustee would not have sold the property to them;" that Becker and Blakely by their present petition sought to obtain a review of the order of the referee, and that they were barred from such relief, "for they failed to file a petition for review of the order of the referee within the time required by law," but had allowed six

months to expire before filing their present petition; and the special master recommended that the petition for refund be denied.

Appellants then filed motion to set aside the findings of fact and conclusions of law of the special master, and requested certain findings at the hands of the court. The trustee in bankruptcy moved to confirm the findings and conclusions. The court, having "examined the record and being fully advised in the premises," ordered and adjudged that the motion and requests of Becker and Blakely be overruled, that the motion of Thomas as trustee in bankruptcy be sustained, and the court approved and confirmed in every particular such findings of fact, conclusions of law, and recommendations of the special master, and denied the relief asked by appellants. This appeal followed in due course.

Appellants allege they were in no way liable for the payment of the costs of administration of the bankrupt estate; that they paid the money agreed upon into the court only because they desired to secure the property, and that any contract for them as lienholders to pay part of the costs of administering the bankrupt estate violated section 67d of the Bankruptcy Act (Comp. Stat. § 9651, subd. D), in that it affected their valid liens. The claim of appellants bluntly stated is: That the officers of the bankruptcy court extorted fees from them for which they were not liable; that the contract found by the special master was void, not only violative of public policy as expressed in section 67d of the Bankruptcy Act, but also because it was unsupported by any consideration.

Appellants in an extended brief argue many legal propositions concerning which there is little controversy, viz. that special contracts of officers for payment of fees different from those fixed by law are void as against public policy; that section 67d of the Bankruptcy Act protects liens given and accepted in good faith, and that valid liens, untainted by fraud, are not to be disturbed by the institution of bankruptcy proceedings; that contracts obviously intended to bring about results contrary to law cannot be the basis of a successful suit; that under section 72 of the Bankruptcy Act (Comp. St. § 9656) the referee, receiver, or trustee cannot in any form or guise receive different or further compensation than that expressly authorized and prescribed in the Bankruptcy Act; that section 67d and section 72 of the Bankruptcy Act were passed by the Congress and General Order 35 adopted by the Supreme Court of the United States for the express purpose of protecting the public against illegal exactions in commissions, fees, and expenses of the trustee, receiver, referee and others whose compensation is fixed by the terms of the act.

These well-established principles are not disputed by appellee in this case, but the question arises whether there is any record before us on which to base the very grave charge that appellants have been the victims of unjust exactions by the officers of the Bankruptcy Court.

[1] In an examination of the record our attention is immediately challenged by the motion of appellee to strike that part of the printed record from page 2 to page 8, inclusive, designated "Abstract of Record to be Printed," which was presented by appellants to appellee for approval, but which was never agreed to by appellee nor approved by the court. Clearly that part of the printed record is not properly before us for consideration. The motion also asked to have stricken from the printed transcript the document entitled, "Report of Sale by Trustee," with exhibit attached, and the "Confirmation of Sale," by the trustee, for the reason that these documents are a part of the evidence which this court refused to permit to be made a part of the record.

It is undisputed that appellees made a motion before Judge Merrill E. Otis, sitting for Judge John C. Pollock in the United States District Court of Kansas, to strike a purported transcript and also a condensed statement of the evidence from the files, for the reason that the evidence taken before the special master was not preserved; that no transcript of the same was filed with the clerk, nor presented to the District Court. Appellants also moved the court to approve a statement of evidence and abstract of record presented. Judge Otis, in passing on these matters, said:

"It being agreed by counsel that the transcript of evidence filed herein on April 27, 1925, was not filed nor in existence at the time this cause was submitted to the trial court on March 3, 1925, nor when the trial court decided this case upon April 2, 1925, nor until after the petitioners had appealed this cause, and that said transcript of evidence has never been presented to or considered by the trial court, the court finds that the respondent's motion to strike said transcript from the files and record should be sustained; and, it further appearing that it is now impossible to find what, if any, evidence was submitted to the trial court at the time this cause was presented to it, nor before said

cause was decided, nor before said cause was appealed, the court further finds that the petitioners' motion filed May 9, 1925, to approve the statement of evidence and the abstract of record and to permit petitioners to furnish copies for the printer and motion filed August 1, 1925, to approve abstract of evidence and abstract of record, and for permission to file an amended præcipe, should be denied; and that the respondent's motion filed May 6, 1925, to strike the condensed statement of the evidence from the record and files, should be sustained."

Subsequently, to wit, September 30, 1925, appellants attempted to supply the evidence purported to have been before the trial court by presenting to this court a "Motion Suggesting Diminution of the Record." This motion was denied.

[2] It is apparent that the evidence before the trial court at the time this case was passed on has not been preserved and is not properly before this court for its consideration. The præcipe shows that the abstract of testimony and exhibits was not filed. The motion to strike from the printed record pages 2 to 8, inclusive, and also the "Report of Sale by Trustee" with exhibit attached and the "Confirmation of Sale," should be sustained.

The record then, upon which this appeal is to be determined, is comprised of the petition of appellants filed in the case, the answer of appellee, the report of the special master, the order approving the same, certain unimportant and incidental motions, and the necessary appeal proceedings. To these we therefore confine our attention.

The special master found that the commissions charged by the receiver, trustee, and referee were computed as provided by the Bankruptcy Act, and that the fees allowed to the attorneys were reasonable. There is nothing in the record whatever to dispute this finding. It was approved by the trial court. It must stand.

Appellants contend that proper orders were not made as to the allowance of the fees now questioned. While there is much in argument as to this, we are not advised from the record whether the proper orders were made or not. Appellants, so far as this record discloses, made no objection to these allowances at the time. If they had done so and their objection had been overruled, the matter could have been reviewed by the District Court. Not only did they fail to file any objection to such allowances, but later consented thereto, paid the money covering the same into court, and their counsel received

part thereof as his fees and expenses. Appellants took possession of the real property, and not for six months thereafter did they raise any objection to said fees, expenses, and commissions which they now claim were extorted from them.

Appellants' counsel very frankly concedes that they did not object to these items for fear the referee would not sell the assets of the bankrupt estate to them, and before objection they desired to make sure they had secured title to and possession of the property.

The special master found that, had it not been for the agreement of appellants to pay these items of cost, the trustee would not have sold the property to them, and further that one of the elements of their bid accepted by the trustee was that they would pay them. At the time of the sale to Becker and Blakely, the amount the trustee had on hand was $128.40, which was totally inadequate to pay these costs.

There is some discrepancy in the record as to the amount actually paid by the appellants for the assets of the bankrupt corporation. Inferences could be drawn that the amount was $26,500, but apparently there was paid $28,853.05, covering the amount of appellants' liens, the mortgage to the Kaw Valley National Bank, and the $2,329.86 to cover the cost items. Appellee contends that it was part of the agreement that the fees of the trustee and the receiver should be figured on a basis of a sale for $26,500. This matter is not made explicit by the record, the report of sale not being included therein. It is not, however, of particular importance.

Appellants contend that this special contract for the payment of these costs in the bankruptcy proceedings is void, in that it impaired their lien security by compelling them to pay costs for which they were in no way responsible.

[3] We do not understand from the record before us that appellants were required to pay these costs as lienholders. They were under no compulsion so to do. They were part of the payment made by them as purchasers of the property. It was a voluntary payment on their part, and had no connection with their liens. The completion of the payment of the purchase price resulted in wiping out the liens. The contract, which the special master found, was merged in a deed for the real estate and a bill of sale for the personal property. If it was apparent from the record that unlawful and unjust fees had been extorted from parties who rightfully were pursuing their claims in the

bankruptcy court, we should not hesitate to voice condemnation thereof, but we are not to presume maladministration of affairs by the court officials. These costs have been paid by appellants without any objection as a part of the arrangement for the purchase of the property. The money has been disbursed—some of it to their own counsel. No offer has been made to return the property. The special master found that the sale would not have been made unless appellants agreed to pay these costs. If the referee had refused to accept their bid, they could have taken the matter before the District Court for review. They did not do so. There was no extortion so far as this record discloses. By their foreclosure in the bankruptcy court they acquired certain rights in the way of possession of the property which they would not have secured had they proceeded by foreclosure in the state courts. The expenses which they paid as a part of their bid were incurred in a contest over Marker's claim of title to the real estate, which contest was instituted at their suggestion. Having had the advantages of the foreclosure in the bankruptcy court, they now in this proceeding ask to have returned to them a part of the purchase price under the plea that it was extorted from them by the wrongful conduct of the officials of the bankruptcy court. We think the equities are not with appellants as far as this limited record shows.

They are in no position to complain of the order and judgment of the District Court, and the same is affirmed.